FILED ENTERED
LODGED RECEIVED
JUN 06 2025
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

Judge Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br><br>AVANISH JHA,<br>Defendant. | NO. CR22-049 RSM<br><br>**PLEA AGREEMENT** |

The United States, through Acting United States Attorney Teal Luthy Miller and Assistant United States Attorney Philip Kopczynski of the Western District of Washington, and Defendant Avanish Jha and his attorney Assistant Federal Public Defender Sara Brin, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B).

1. **The Charge.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to the following charge contained in the Indictment:

a. Smuggling, as charged in Count 39, in violation of Title 18, United States Code, Section 545.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

By entering a plea of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2. **Elements of the Offense.** The elements of the offense to which Defendant is pleading guilty are as follows:

a. The elements of smuggling, as charged in Count 39, are as follows: Defendant fraudulently or knowingly imported or brought merchandise into the United States, or caused others to import or bring merchandise into the United States, contrary to law, namely, misbranded or adulterated prescription drugs in violation of Title 21, United States Code, Section 331(a).

3. **The Penalties.** Defendant understands that the statutory penalties applicable to the offense to which Defendant is pleading guilty are as follows:

a. For the offense of smuggling, as charged in Count 39: A maximum term of imprisonment of up to 20 years, a fine of up to $250,000, a period of supervision following release from prison of up to 3 years, and a mandatory special assessment of 100 dollars. If a probationary sentence is imposed, the probation period can be for up to five years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

Defendant understands that, if pleading guilty to a felony drug offense, Defendant will become ineligible for certain food stamp and Social Security benefits as directed by Title 21, United States Code, Section 862a.

4. **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's guilty plea may entail, even if the consequence is Defendant's mandatory removal from the United States.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

a. The right to plead not guilty and to persist in a plea of not guilty;



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b. The right to a speedy and public trial before a jury of Defendant's peers;

c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

e. The right to confront and cross-examine witnesses against Defendant at trial;

f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h. The right to appeal a finding of guilt or any pretrial rulings.

6. **United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a. The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d. Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

7. **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8. **Statement of Facts.** Defendant admits Defendant is guilty of the charged offense. The parties agree on the following facts:

a. Since at least March 2018, Defendant, together with his co-defendant, Rajnish Jha, and others, operated a Facebook page that claimed to represent a pharmacy called Dhrishti Pharma International (DPI), based in India. Through this page, over several years, Defendant and others coordinated the sale of prescription drugs, and items purporting to be prescription drugs that were in fact counterfeit, misbranded, or adulterated, to purchasers in the United States and elsewhere.

b. The DPI Facebook page included numerous videos and images of drugs offered for sale, as well as contact information. This Facebook page



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

described DPI as an "exporter from India dealing in all Kind of Anti Cancer/Hepatitis/ED and Stroids and imported medicines."

Early Private Investigation

c. Beginning in approximately March 2018, and continuing for approximately a year, Defendant and others facilitated the sale of prescription drugs, including Jardiance (used to treat diabetes), Xovoltib (used to treat non-small cell lung cancer), Cyendiv (used to treat cancer and idiopathic pulmonary fibrosis), and Keytruda (used to treat certain cancers), to private investigators posing as buyers in the United States who had contacted Defendant through contact information listed on the DPI Facebook page. All these drugs were intended for the market in India or elsewhere; none were approved for use in the United States.

Sales to Undercover Federal Agents

d. In April 2019, undercover federal agents began corresponding with Defendant and Rajnish Jha about purchasing prescription drugs.

e. In one early conversation, in May 2019, Rajnish Jha told an undercover agent that he could "manage" Indian customs for any deliveries to the United States, and that if U.S. customs officials inquired about the deliveries, the drugs should be described by the recipient as "gifts" of "edible health products." Rajnish Jha also stated in this conversation that he had been "regularly supplying" drugs to the U.S. for the "last 4 years."

f. In May 2019, undercover agents began purchasing prescription drugs from Defendant and Rajnish Jha for shipment to the United States. The first purchase included Cyendiv, Nublexa (used to treat colon cancer), Votrient (used to treat kidney cancer), Jakavi (used to treat certain bone marrow disorders), and Dacihep (used to treat Hepatitis C). None of these drugs were approved for use in the United States. A prescription was not requested or provided to complete the



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

order. The purchased drugs arrived in the United States around June 15, 2019. These drugs were misbranded under U.S. law.

g. In August 2019, an undercover agent purchased a vial of Keytruda 50mg. A prescription was not requested or provided. The vial arrived at the destination address in Kirkland, Washington, on August 30, 2019. A laboratory analysis determined that this purported Keytruda did not contain pembrolizumab, Keytruda's active ingredient. The laboratory identified omeprazole, an over-the-counter medicine used to treat heartburn, in the vial that purportedly contained Keytruda. The laboratory also identified that the packaging for this drug was not consistent with authentic Keytruda's packaging, which is produced by Merck. Merck holds a registered trademark and patent for Keytruda in the United States. The vial of Keytruda shipped by DPI was counterfeit. The retail price of an authentic vial of Keytruda 50mg was approximately $2,190 at this time.

h. On October 9, 2019, a private investigator and an undercover agent spoke with Defendant in a WhatsApp video chat. During the conversation, Defendant was asked about possibly breaking up large payments for drug orders. Defendant responded: "I don't mind accepting it here…because I methods to covert it into various services part of it…from medicine purchase point of view it is difficult for us to accept this because the product is not registered there in the US? You also understand that? But we can get the money in form of services: medical tourism services and medical consultation. All these things are there." In this same conversation, Defendant also stated that he was "paying close to 500,000 rupees a month" to "manage" the "customs people" in India for DPI's shipments.

i. In October 2019, an undercover agent wired $6,000 to Rajnish Jha as partial payment for upcoming orders.

j. In November 2019, an undercover agent spoke with Defendant in a Facebook Messenger video call. During the conversation, the undercover agent



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

discussed an issue with wiring funds to India because some funds had been returned, which "raises red flags with the government." The undercover agent explained, "I don't know what the law is over there, but it's not legal for me to be importing these medicines, right?" Defendant answered "yeah." Defendant initially suggested using his medical tourism business to transfer purchase funds because services associated with medical tourism are recognized in India as legitimate services for which funds can be accepted. But Defendant then told the undercover agent he would identify an individual based in the U.S. who would accept payment for drug purchases from DPI. Defendant also said that DPI had traditionally sold pharmaceuticals on the Chinese market, but the company was expanding into the U.S. and Australian markets.

k. During correspondence in December 2019 with an undercover agent, Defendant quoted a price of $1,625 per vial of Keytruda 50mg.

l. On January 17, 2020, undercover agents delivered $32,400 in cash to an associate of Rajnish Jha in Queens, New York, as payment for future orders of Keytruda 50mg and other drugs from DPI.

m. On January 27, 2020, undercover agents posing as a different buyer delivered $50,000 in cash to an associate of Defendant in Fort Lee, New Jersey, as payment for future orders of Keytruda 50mg and other drugs from DPI.

n. Three vials of Keytruda 50mg purchased with the funds delivered on January 17, 2020, were shipped into the United States on or about March 30, 2020, with an associated shipping number of ED973936684IN. This purported Keytruda was misbranded, adulterated, and counterfeit under U.S. law.

o. Laboratory testing on a sample of two vials of purported Keytruda 50mg purchased with the funds delivered in January 2020 showed that it did not contain pembrolizumab, and instead contained a heartburn medicine.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

p. In September 2020, undercover agents ordered Keytruda 100mg from DPI. Laboratory testing showed that the purported Keytruda from this order contained pembrolizumab; however, two vials contained fungal growths, which would not be present in authentic medicine manufactured by Merck. Additionally, the printing process on the packaging was not consistent with the packaging of authentic Keytruda 100mg.

q. On February 19, 2021, an undercover agent spoke with Defendant in a Facebook Messenger video call. They discussed payment for an upcoming order from DPI. They also discussed whether they should use a means of communication other than Facebook Messenger to communicate in the future. The undercover agent stated that his business was "not exactly legal." Defendant replied, "you cannot earn money if you are doing legal things." Defendant also stated that "everywhere it is like that." He advised that his shop in India was 300 square feet, and the shop was "just for the name sake." Defendant said he had a much bigger warehouse as well. Defendant explained, "to do something illegal you need to have a legal place as well."

r. In the same conversation, Defendant stated that he understood the need to be discreet because the U.S. government is "stricter" than the Indian government. The undercover agent said he liked the idea of using a lot of addresses for the shipments coming to the United States. Defendant agreed that it "has to be done secretly." He said they would split shipments and not use large packages. For example, for a purchase of 100 vials, they would use 10 addresses so each address would receive 10 vials. Those shipments would then be divided into two to three parts, so each package would only contain three to four vials

s. On February 25, 2021, undercover agents delivered $50,000 in cash to an individual in Seattle, Washington, who had been previously identified by Defendant. Undercover agents delivered $50,000 more on March 4, 2021. Both



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

cash deliveries were payment for an order of 26 vials of Keytruda 100mg from DPI. The price was approximately $3,500 per vial. The retail price of authentic Keytruda 100mg in the United States was approximately $5,033 per vial at that time.

t. In April, May, and June 2021, the 26 vials of Keytruda 100mg purchased from DPI arrived in the United States. Some of the vials were sampled and found to contain pembrolizumab, but analysis also showed that the drugs were misbranded and counterfeit under U.S. law.

u. In total, Defendant and Rajnish Jha facilitated the sale of eight vials of Keytruda 50mg and 28 vials of Keytruda 100mg, among other prescription drugs, to undercover agents. For the sales of counterfeit Keytruda made to undercover agents, the corresponding retail value of authentic Keytruda was more than $150,000. The packaging and labels on the products sold by Defendant and Rajnish Jha would have appeared to a reasonably informed purchaser to be identical or substantially equivalent to authentic Keytruda.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

9. **Sentencing Factors.** The parties agree that the following Sentencing Guidelines provisions apply to this case:

a. A base offense level of 8 under USSG § 2B5.3(a), as cross-referenced by USSG § 2T3.1(c)(1);

b. An enhancement of 10 levels for an infringement amount exceeding $150,000 under USSG §§ 2B5.3(b)(1)(B) and 2B1.1(b)(1)(F), as cross-referenced by USSG § 2T3.1(c)(1);



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

c. An enhancement of 2 levels for an offense involving a counterfeit drug under USSG § 2B5.3(b)(5), as cross-referenced by USSG § 2T3.1(c)(1); and

d. An enhancement of 2 levels for a role adjustment under USSG § 3B1.1(c).

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10. **Acceptance of Responsibility.** At sentencing, if the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11. **Recommendation Regarding Imprisonment.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States agrees to recommend that the appropriate term of imprisonment to be imposed by the Court at the time of sentencing is no longer than the low end of the Sentencing Guidelines advisory range calculated by the Court. Defendant is free to make any recommendation permitted by law. Defendant understands that this recommendation is not binding on the Court and the Court may reject the recommendations of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

12. **Restitution.** Defendant agrees that the Court can order Defendant to pay restitution to the victims of Defendant's crimes and, in exchange for the agreements by the United States contained in this Plea Agreement, Defendant agrees that restitution in this case should not be limited to the offense of conviction. Defendant is aware that the United States will present evidence supporting an order of restitution for all losses caused by all of Defendant's criminal conduct known to the United States at the time of Defendant's guilty plea, including losses resulting from crimes not charged or admitted by Defendant in the Statement of Facts.

a. The full amount of restitution shall be due and payable immediately on entry of judgment and shall be paid as quickly as possible. If the Court finds that the defendant is unable to make immediate restitution in full and sets a payment schedule as contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy Defendant's full and immediately-enforceable financial obligation, including, but not limited to, by pursuing assets that come to light only after the district court finds that Defendant is unable to make immediate restitution.

b. Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party. Defendant agrees to cooperate fully with the United States' investigation identifying all property in which Defendant has an interest and with the United States' lawful efforts to enforce prompt payment of the financial obligations to be imposed in connection with this prosecution. Defendant's cooperation obligations are: (1) before sentencing, and no more than 30 days after executing this Plea Agreement, truthfully and completely executing a Financial Disclosure Statement



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

provided by the U.S. Attorney's Office and signed under penalty of perjury regarding Defendant's and Defendant's spouse's financial circumstances and producing supporting documentation, including tax returns, as requested; (2) providing updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances; (3) authorizing the U.S. Attorney's Office to obtain Defendant's credit report before sentencing; (4) providing waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information; (5) authorizing the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office; (6) submitting to an interview regarding Defendant's Financial Statement and supporting documents before sentencing (if requested by the U.S. Attorney's Office), and fully and truthfully answering questions during such interview; and (7) notifying the U.S. Attorney's Office before transferring any interest in property owned directly or indirectly by Defendant, including any interest held or owned in any other name, including all forms of business entities and trusts.

c. The parties acknowledge that voluntary payment of restitution prior to the adjudication of guilt is a factor the Court considers in determining whether Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a). In addition, in any event, the United States will consider Defendant's cooperation regarding restitution in making its sentencing recommendation.

13. **Abandonment of Contraband.** Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

14. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and moves to dismiss the remaining counts in the Indictment at the time of sentencing. In this regard, Defendant recognizes the United States Attorney's Office for the Western District of Washington has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

15. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement: (a) the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence; (b) Defendant will not oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement; and/or (c) Defendant waives any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to file additional charges against Defendant and/or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

16. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty plea required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable). This includes any procedural challenges to the sentence, including any claim that the procedure employed at sentencing violated Defendant's constitutional rights.

Defendant also agrees that, by entering the guilty plea required by this Plea Agreement, Defendant waives any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation or a claim of prosecutorial misconduct based on facts unknown or not reasonably discoverable prior to entry of the judgment of conviction.

Defendant acknowledges that certain claims, including certain claims for prosecutorial misconduct, will be barred by operation of law by virtue of their guilty plea,



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

independently from this Plea Agreement. This waiver does not preclude Defendant from bringing an appropriate motion to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to claims not subject to the waiver, above) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

17. **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

18. **Statute of Limitations.** In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, or Defendant withdraws from this Plea Agreement after it has been accepted by the Court, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office; or (3) thirty days following the grant of a motion to withdraw from the Plea Agreement.

19. **Completeness of Plea Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Dated this 6th day of June, 2025.

AVANISH JHA
Defendant

SARA BRIN
Attorney for Defendant

PHILIP KOPCZYNSKI
Assistant United States Attorney

for
SETH WILKINSON
Assistant United States Attorney



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970