The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AVANISH KUMAR JHA, and<br>RAJNISH KUMAR JHA,<br><br>Defendants. | NO. CR22-049 RSM<br><br>UNITED STATES'<br>SENTENCING MEMORANDUM |

The defendants in this case illicitly shipped medicines from their home in India to the United States and other destinations around the globe. Many of the medicines were counterfeit and lacked the active ingredients of the authentic drugs, meaning patients who used them would have unknowingly had no chance for relief. Other medicines sold by the defendants were misbranded or adulterated with fungal growths. For their serious crimes, the Court should sentence each defendant to a low-end Guidelines term of imprisonment—which is 30 months, if the Court adopts the parties' calculation—and impose a fine of $100,000. The Court should also order restitution for Merck, which holds the copyright for the main counterfeit drug sold by the defendants during the investigation.

## BACKGROUND

Because the defendants committed their offenses in concert and pleaded guilty on

Sentencing Memo - 1
*United States v. Jha* / CR22-049 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

identical terms, the government is filing this single sentencing memorandum addressing both defendants to avoid burdening the Court with duplicative submissions.

The investigation of the defendants' operations began in 2018.[1] At that stage, private investigators from the pharmaceutical industry noticed that the defendants were advertising on Facebook that they could export everything from cancer treatments to erectile disfunction pills to steroids. The private investigators obtained at least four different types of prescription drugs from the defendants by posing as buyers from the Untied States. None of the drugs were approved for use in the United States by the FDA.

One of the drugs sold by the defendants was Keytruda. Keytruda is a blockbuster cancer drug made by Merck. It is, as a Barron's reporter wrote last year, the "world's biggest drug" and "one of the most important medicines ever discovered." It is both effective for a wide range of cancers and costly for patients to obtain—a combination of factors that means Keytruda, by itself, accounts for nearly half of all Merck's revenue. This makes Keytruda an irresistible target for scammers and counterfeiters.

When federal law enforcement began their own investigation of the defendants in 2019 based on a report from the private investigators, Keytruda was a natural focus. Undercover agents started talking to the defendants by Facebook video chats, WhatsApp messaging, and other means, and before long, the agents were able to purchase numerous different prescription drugs, including Keytruda. For the defendants, this new business in America was part and parcel of a racket they had been carrying on for years. In one early conversation, Rajnish Jha told an undercover agent that he had been "regularly supplying" drugs to the United States for the "last four years."

---

[1] The facts presented in this memorandum are taken from the parties' plea agreements and the discovery provided to the defense. Because the Court waived the preparation of a presentence report, the government has not given the discovery to the Probation Office as it normally would. Undersigned counsel expects that all the facts presented here are uncontested, but to the extent it is necessary or helpful, the government will submit to the Court the documents or other evidence that establishes these facts.

Sentencing Memo - 2
*United States v. Jha* / CR22-049 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The first shipment of Keytruda purchased by an undercover agent arrived in Kirkland, Washington from India in August 2019. Laboratory testing showed that it was not Keytruda at all but rather over-the-counter heartburn medicine in a bottle labeled as Keytruda. Keytruda's active ingredient—the substance that could add months or even years to the lives of terminal cancer patients—was totally absent.

As time went on, undercover agents learned more about the defendants' business, including how they avoided detection by customs officials when shipping their products out of India. In one conversation, Rajnish Jha said that the drug purchases should always be described on customs forms as "gifts" of "edible health products." In a different conversation, Avanish Jha told an undercover agent that he was "paying close to 500,000 rupees a month" to "manage" the "customs people" in India.

With the progression of the investigation, undercover agents asked to increase their purchases of Keytruda and other medications, and the defendants readily obliged. The defendants arranged to receive cash drops from the undercover agents as payment for particularly large orders. Those drops occurred in New York, New Jersey, and Washington, in amounts of $32,400, $50,000, and $100,000, respectively. Testing on samples of the nearly three dozen vials of Keytruda delivered by the defendants showed that some of them again lacked the active ingredient. And two of the tested vials, while found to contain Keytruda's active ingredient, were packaged in counterfeit boxes and contaminated by fungal growths. One of the contaminated vials is pictured here with the black specks of fungus visible in the middle:



Sentencing Memo - 3
United States v. Jha / CR22-049 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

As the undercover agents built trust with the defendants, the defendants became more candid about the true nature of their business. In a conversation in February 2021, Avanish Jha remarked that "you cannot earn money if you are doing legal things." Because their drug exporting business was illegal, Avanish Jha acknowledged that it had "to be done secretly." He also alluded to having another business in which he resold imported Chinese goods in India using a "front" and "a shell company." Investigators never learned the specifics of what that other business entailed.

In April 2023, the defendants were arrested in Singapore. Undercover agents had suggested meeting the defendants there to discuss additional large purchases in person. The government asked Singapore to extradite the defendants to the Untied States to face the charges in this case. The defendants fought extradition for nearly two years, but in January 2025, a Singaporean judge granted extradition on roughly half the counts in the 56-count indictment, and they arrived in this district the following month.

Each defendant reached an agreement to plead guilty. Dkts. 35, 39. Each pleaded guilty to one felony count of smuggling under 18 U.S.C. § 545, as charged in Count 39. They now appear before the Court for sentencing. As part of its agreement with the defendants, the United States moves to dismiss all counts of the indictment except for Count 39.

## SENTENCING RECOMMENDATION

### A.   *Sentencing Guidelines*

The parties agree that the total offense level, after accounting for the reduction for acceptance of responsibility, is 19. The government is not aware of any prior convictions for either defendant, and if the Court accepts that as accurate, then the defendants are in criminal history category I and the advisory range is 30 to 37 months of imprisonment. USSG § 5A. The Guidelines also provide that the Court "shall impose a fine in all cases, excerpt where the defendant establishes that he is unable to pay is not likely to become able

Sentencing Memo - 4
*United States v. Jha* / CR22-049 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to pay any fine." USSG § 5E1.2(a). The advisory range for a fine is $10,000 to $100,000. USSG § 5E1.2(c)(3).

**B.    *Imprisonment***

The Court should sentence each defendant to a low-end term of imprisonment. If the Court accepts the parties' Guidelines calculation and finds that the defendants are in criminal history category I, then the sentence should be 30 months. Such a sentence is sufficient but not greater than necessary to satisfy the purposes of 18 U.S.C. § 3553(a).

The defendants committed a serious offense that merits a sentence at the low end of the Guidelines range. Exporting counterfeit medicines is a cruel business that robs ill people of any hope for relief. Cancer patients unknowingly using fake Keytruda would have no chance of improvement with their terminal disease. The defendants profited by peddling counterfeit Keytruda and many other drugs, all in contravention of numerous U.S. laws and regulations that are meant to keep people safe.

Regrettably, schemes like this one are not unique. Many people line their pockets by flouting the Food, Drug, and Cosmetic Act and other important U.S. laws. By imposing a 30-months sentence, the Court can send a strong message that the United States does not tolerate this conduct. General deterrence has special importance in a case where patient safety is at stake.

It must be acknowledged that, despite vigorously contesting extradition, the defendants quickly pleaded guilty after reaching the United States. They deserve every bit of the three-level reduction of the offense level for their prompt acceptance of responsibility. But a departure below the low end of the Guidelines range is not justified. The Court should impose 30 months.

**C.    *Fine***

The available information indicates that the defendants did well for themselves financially by running at least one and perhaps multiple businesses in India. With no facts before the Court that would allow it to find that the defendants are unable to pay a fine, the

Sentencing Memo - 5
*United States v. Jha* / CR22-049 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Court should impose a fine of $100,000 on each defendant. That amount, which when put together is roughly equivalent to the amount the defendants made in the sales to undercover agents, is amply justified on this record. The defendants should not profit from their illegal and dangerous conduct.

### D. *Supervised Release*

The Guidelines advise that supervised release is ordinarily not appropriate for defendants who will be deported after imprisonment. *See* USSG § 5D1.1(c). This case presents analogous circumstances because the defendants will presumably return to India immediately upon their release from custody. The government therefore does not recommend supervised release.

### E. *Restitution*

Merck supported the government's investigation throughout, as described in a victim impact statement that will be submitted to the Court. Merck's assistance consisted of, among other things, laboratory testing on the Keytruda sold by the defendants. The Court should order restitution of $81,596.67 to compensate Merck for its costs.

## **CONCLUSION**

The Court should sentence each defendant to 30 months in prison and a $100,000 fine, and impose joint and several restitution for Merck in the amount of $81,596.67.

DATED: July 3, 2025

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

*s/ Philip Kopczynski*
PHILIP KOPCZYNSKI
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
(206) 553-7970
philip.kopczynski@usdoj.gov

Sentencing Memo - 6
United States v. Jha / CR22-049 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970